STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
CARL WASHINGTON, DEFENDANT-APPELLANT.

Argued March 23, 1966—Decided June 6, 1966.

*Mr. Edward Suski, Jr.* argued the cause for appellant.

*Mr. Norman Heine,* Camden County Prosecutor, argued the cause for respondent.

The opinion of the court was delivered by

PROCTOR, J. The primary issue on this petition for post-conviction relief is whether the defendant, Carl Washington, was properly sentenced as an habitual criminal pursuant to *N. J. S.* 2A: 85–12 and 13.[1] After the trial court denied the relief sought in the petition, we certified the defendant's

---

[1] *N. J. S.* 2A :85–12 provides:

"Any person convicted on three separate occasions of high misdemeanors in this State, or of crimes under the laws of the United States or any other State or country which crimes would be high misdemeanors under the laws of this State, or whose convictions for such offenses in this State or under the laws of the United States or any other State or country shall total three or more, and who thereafter is convicted of a misdemeanor or a high misdemeanor under the laws of this State, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, may impose upon the person so convicted a sentence in the State Prison for any term of years or for life.

Conviction of two or more of such crimes or high misdemeanors charged in one indictment or accusation, or in two or more indict-

246

appeal on our own motion prior to argument in the Appellate Division.

The facts have been stipulated by the parties to this appeal. On June 21, 1956 the Camden County Grand Jury indicted defendant for breaking, entry and larceny, and a plea of not guilty was entered to this indictment on December 10, 1956. At that time defendant was not represented by counsel. Shortly thereafter an attorney was appointed by the court to represent the defendant, and in the latter part of April 1957 he was tried and found guilty by a jury. Following this conviction the State proceeded against the defendant as a fourth offender in accordance with *N. J. S.* 2A:85-12 and 13. The

ments or accusations consolidated for trial, shall be deemed to be only one conviction."

*N. J. S.* 2A:85-13 provides:

"If at any time, before sentence, it shall appear that a person convicted of a misdemeanor or a high misdemeanor under the laws of this State has previously been convicted as set forth either in sections 2A:85-8, 2A:85-9 or 2A:85-12 of this Title, and it also appears to the court by whom such person is to be sentenced that the offenses resulting in such conviction are such as to warrant the imposition of a penalty greater than the maximum which may be imposed upon a person convicted of such misdemeanor or high misdemeanor who had not previously been convicted as aforesaid, then the court shall direct the prosecutor of the county in which such conviction was had to file an accusation accusing the said person of such previous convictions. Whereupon, the court in which such conviction was had, shall cause the said person to be brought before it and shall inform him of the allegations contained in such accusation and of his right to be tried as to the truth thereof, and shall require such person to plead to the accusation. If such person refuses to plead or remains silent or pleads not guilty, a not guilty plea shall be entered and a jury shall be impanelled to inquire whether said person is guilty as outlined in sections 2A:85-8, 2A:85-9 and 2A:85-12 of this Title, respectively.

If the jury finds said person guilty or if he pleads guilty or non vult, the court may sentence him to the punishment prescribed in sections 2A:85-8, 2A:85-9 and 2A:85-12, as the case may be.

The said person shall have the right to waive, in writing, the trial by jury provided in this section, and if he shall do so, the court, in its discretion, may accept the waiver and try and decide the issue without a jury, and if the said person is found guilty, the court may impose the same sentence as though said person had been found guilty by the jury."

prosecutor prepared an accusation charging the defendant with being a fourth offender and alleging three previous convictions of crimes committed in the State of Ohio, all of which would have been high misdemeanors under the laws of this State.

On May 23, 1957 the defendant appeared before the trial court with his attorney and pleaded guilty to the accusation, and on June 14, 1957, he was sentenced as an habitual offender to a prison term of not less than 15 nor more than 20 years.

There is no suggestion that the procedure for sentencing an habitual offender provided in *N. J. S.* 2A:85-13 was not properly followed by the court. However, the defendant contends that this statutory procedure violated his rights under the Federal and New Jersey Constitutions.

Defendant first contends that the Due Process clause of the Fourteenth Amendment was violated because the indictment did not specify that the State planned to proceed against him as an habitual offender. He argues that the charge of being a fourth offender is an integral and inseparable part of the underlying criminal charge (in this case breaking, entry and larceny) and, therefore, that the indictment should have specifically alleged his prior convictions.

An identical argument was rejected by the United States Supreme Court in *Oyler v. Boles,* 368 *U. S.* 448, 82 *S. Ct.* 501, 7 *L. Ed.* 2d 446 (1962), where the court upheld a West Virginia statute which contained provisions substantially the same as *N. J. S.* 2A:85-13. In that case Oyler was convicted of a felony in West Virginia. Sentence was deferred and six days later the prosecutor filed a written information alleging that the defendant had been convicted in Pennsylvania on three prior occasions. Oyler, accompanied by his counsel, acknowledged in open court that he was the person named in the information. Thereupon, the court sentenced him to life imprisonment as an habitual offender. In affirming the state court's denial of Oyler's application for *habeas corpus,* Justice Clark speaking for the court said:

"Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense. Chandler v. Fretag, 348 U. S. 3, 8, 75 S. Ct. 1, 4, 99 L. Ed. 4, 9 (1954). Thus, although the habitual criminal issue may be combined with the trial of the felony charge, 'it is a distinct issue, and it may appropriately be the subject of separate determination.' Graham v. West Virginia, 224 U. S. 616, 625, 32 S. Ct. 583, 586, 56 L. Ed. 917, 921 (1912). If West Virginia chooses to handle the matter as two separate proceedings, due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding. See Graham v. West Virginia (U. S.) supra.

Nevertheless, a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense." 368 U. S., at p. 452, 82 S. Ct., at p. 503, 7 L. ed. 2d, at p. 450.

See also *McDonald v. Commonwealth of Massachusetts,* 180 U. S. 311, 21 S. Ct. 389, 45 L. Ed. 542 (1901). The defendant here does not suggest that he was not given a sufficient opportunity to contest the recidivist charge or, indeed, that he has any defense to such charge.

The *New Jersey Constitution* of 1947, *Art.* 1, *par.* 8 provides in pertinent part:

"No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury * * *."

See also *R. R.* 3:4–2. Defendant contends that the charge of being an habitual offender sets forth a "criminal offense" within the meaning of the New Jersey Constitution and *R. R.* 3:4–2, and that any action taken against him for being a recidivist must be preceded by a presentment or indictment of a grand jury rather than by an accusation as provided in *N. J. S.* 2A:85–13.

██ There is no merit to this contention. Habitual offender legislation does not create a new substantive crime, but rather imposes a greater penalty for the particular crime for which the defendant is convicted, where such defendant has persistently engaged in unlawful activities. See *State v.*

*Tyler,* 88 *N. J. Super.* 396, 403–404 (*App. Div.* 1965) ; *State v. Wimbush,* 54 *N. J. Super.* 283, 287–288 (*App. Div.* 1959) ; *Janiec v. McCorkle,* 52 *N. J. Super.* 1, 6 (*App. Div.* 1958), *certiorari* denied *sub nom. Janiec v. New Jersey,* 362 *U. S.* 944, 80 *S. Ct.* 811, 4 *L. Ed. 2d* 772 (1960) ; *Worbetz v. Goodman,* 47 *N. J. Super.* 391, 405 (*App. Div.* 1957), certification denied 26 *N. J.* 245 (1958), *certiorari* denied 361 *U. S.* 38, 80 *S. Ct.* 142, 4 *L. Ed. 2d* 112 (1959) ; *State v. Culver,* 40 *N. J. Super.* 427, 430–431 (*App. Div.* 1956), modified on other grounds 23 *N. J.* 495, *certiorari* denied 354 *U. S.* 925, 77 *S. Ct.* 1387, 1 *L. Ed. 2d* 1441 (1957) ; *State v. McBride,* 15 *N. J. Super.* 436, 439 (*App. Div.*), *certiorari* denied 342 *U. S.* 894, 72 *S. Ct.* 204, 96 *L. Ed.* 670 (1951). To protect the persons and property of citizens of the State, heavier sentences are imposed on recidivists because they have demonstrated an inability to learn to accept social and civil responsibility. *State v. McCall,* 14 *N. J.* 538, 547 (1954) ; *Mahoney v. Parole Bd. of New Jersey,* 10 *N. J.* 269, 277 (1952), appeal dismissed 344 *U. S.* 871, 73 *S. Ct.* 173, 97 *L. Ed.* 675 (1952).

Before the enactment of *N. J. S.* 2A:85–13 in 1951 it was the practice in this State for the indictment to allege both the crime charged and the accused's earlier convictions. The jury would then decide not only whether the defendant was guilty of the immediate criminal charge but also whether he was the same person who had been convicted on the previous occasions set forth in the indictment. See *State v. Lutz,* 135 *N. J. L.* 603 (*Sup. Ct.* 1947). This procedure, however, created difficulties for both the defendant and the State. As to the defendant, it placed before the jury as part of the State's case evidence of prior convictions which under the usual rules of evidence are admissible only for purposes of impeaching a defendant who takes the stand. See *N. J. S.* 2A:81–12. And as to the State, it prevented the application of habitual offender laws when information concerning a defendant's criminal record was not available to a prosecutor until after the trial had already started. *N. J. S.* 2A:85–13

eliminates these difficulties for both sides. The defendant is protected because the determination of the habitual offender charge in a separate proceeding cannot possibly influence the determination of his guilt or innocence of the crime for which he is indicted. See Comment, 44 *Journal of Criminal Law, Criminology and Police Science* 759, 760–761 (1954). The statute gives the defendant every opportunity, including a jury trial on the issue of identity if he so desires, to show that the provisions of the habitual offender law should not be applied to him. And the State is given additional time to uncover a defendant's previous record in that it can now present an habitual offender accusation at any time before sentence.

*State v. Lefante,* 12 *N. J.* 505 (1953), relied on by the defendant, is not apposite to any issue in this case. There this court said that an indictment must set forth sufficient information to enable the accused to know what crime he is being charged with. In the present case the indictment clearly stated that the defendant was charged with breaking, entry and larceny. The absence of any reference to the possibility of future habitual offender proceedings could not possibly impair the defendant's ability to defend himself on the substantive crime charged.

■ ■ Defendant's final contention is that his constitutional right to a lawyer was violated because he was without the assistance of counsel when he pleaded not guilty to the indictment. However, shortly after arraignment an attorney was assigned to represent the defendant, and he continued to represent him throughout the proceedings. There is no way in which defendant's plea of not guilty, even though made without the advice of counsel, could have prejudiced his right to a fair trial. As Justice Haneman said for this court in *State v. Vogel,* 45 *N. J.* 400, 404 (1965) : "The sole function of an arraignment in New Jersey is to advise the defendant of the charges against him and to have him plead thereto, *R. R.* 3:5–1. By entering a plea of not guilty at that stage in the criminal proceedings a defendant does not adversely

affect or prejudice any trial tactics or strategy which might best serve his cause."

The trial court's denial of defendant's petition for post-conviction relief is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO.—6.

*For reversal*—None.